Robert Lee **HOLLOWAY**, Appellant,

v.

The **STATE** of **Texas**, Appellee.

No. 09 85 058 CR.

Court of Appeals of Texas, Beaumont.

Oct. 16, 1985.

Rehearing Denied Nov. 7, 1985.

R. Leon Pettis, Beaumont, for appellant.

John R. DeWitt, Asst. Crim. Dist. Atty., Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

By indictment, the Appellant was charged with involuntary manslaughter by causing the death of Dee Ann Gray by reason of intoxication. The indictment alleged that Appellant, being intoxicated, intentionally and knowingly operated a motor vehicle which he drove into, and collided with, the person of Dee Ann Gray. Appellant affirmatively waived a jury. The proceeding below was a bench trial. He was found guilty by the trial judge. Punishment was assessed at five years in the State Department of Corrections. This appeal timely followed. The judgment was dated January 14, 1985.

Appellant, in a very competent brief, contends that two errors were committed. First, the evidence was insufficient as a matter of law to sustain the conviction for involuntary homicide because the State *failed to prove that the Appellant was intoxicated.* The second ground of error succinctly states that the evidence was insufficient as a matter of law to sustain a conviction for involuntary homicide.

The Appellant was on the first day of his vacation. He had borrowed a used car from a friend and fellow employee. The owner of the car told the Appellant that the brakes were not working properly. Holloway stated that he checked the brakes before he drove the car. He stated that he had good pedal, a strong pedal and the brake application appeared to be instant. Then Appellant drove the car around town making several stops. He stated the weather was clear and dry. He was driving north on 11th Street in Beaumont. The traffic ahead was extremely heavy. He was approaching a Shamrock Service Station on the corner of 11th Street and Broadway. Appellant hit his brakes. The brake pedal went all the way to the floor. He started to pat them or pump them. He later ran into and over a curb attempting to stop his car. He testified that he was proceeding across the Shamrock Service Station lot trying to stop his car by stomping on the brakes and by trying to put the gear into the park position. The deceased stepped out from behind the gas pumps. Appellant stated that she was about 4 or 5 feet away. The deceased was looking down and washing the driveway with a hose. The car was finally stopped east of the station, on Broadway, near the Interfirst Bank. The above version of the events came from the Appellant.

However, the State called 6 or 7 witnesses to the stand. There was conflicting evidence as to the material facts and as to the elements of the offense leveled against the Appellant. The trial was to an experienced district judge. The evidence of the State's witnesses conflicted in certain instances with the Appellant's statement. There was evidence of Appellant's intoxication at the scene of the tragedy. About two hours later a breathalyzer test was administered. It reflected a .22 reading which indicated intoxication. At the scene and later, the Appellant's breath smelled of alcohol. One witness stated the smell or odor of alcohol was reasonably strong. Another witness testified that this odor was weak.

We find the case was partially based on circumstantial evidence but partially based on direct evidence. Officer Geen testified that, in a stress situation, from his experience, one of the usual manifestations of intoxication was a tendency to be nervous and disoriented to a degree. Geen also said that, under these conditions, at times the muscles tend to quiver. He noticed these signs in this Appellant. Although the breathalyzer test was delayed, we find nothing in the record to indicate that the Appellant had consumed any alcoholic beverages after the tragic accident and before the breathalyzer test was administered.

We point out a question and answer from the record:

"Q. Now, Robert, you have heard all they testified here to about the expert testified you had a point two two Breath Test. You're not denying that you may have been legally intoxicated, are you?

"A. No, sir."

It is, of course, true that after this exchange the Appellant said he was capable of knowing exactly what he was doing. We also find:

"Q. Did you feel, yourself, like you were intoxicated?

"A. No, sir. I would never have gotten in the car and driven if I felt I was real intoxicated; I would stay home, because, uh—"

After reviewing the evidence in a light most favorable to the trial court's judgment and applying the guidelines for appellate review, we overrule the first ground of error holding that there was ample and sufficient evidence to sustain the trial judge's judgment that the State *had proved that Holloway was intoxicated. See* and *compare* the noted and celebrated cases: *Carlsen v. State,* 654 S.W.2d 444 (Tex.Crim.App.1983—Opinion on Rehearing); *Freeman v. State,* 654 S.W.2d 450 (Tex.Crim.App.1983—Opinion on Rehearing); *Denby v. State,* 654 S.W.2d 457 (Tex.Crim.App.1983—Opinion on Rehearing) and *Wilson v. State,* 654 S.W.2d 465 (Tex.Crim.App.1983—Opinion on Rehearing). *See also Houston v. State,* 663 S.W.2d 455 (Tex.Crim.App.1984).

In connection with the blood alcohol content of .22, *see Hayes v. State,* 634 S.W.2d 359 (Tex.App.—Amarillo 1982, no pet.). *TEX.PENAL CODE ANN. sec. 19.05* (Vernon 1974) provides that a person commits an offense described as involuntary manslaughter if that person by accident or mistake when operating a motor vehicle while intoxicated and, by reason of such intoxication, causes the death of another person. For the purposes of *sec. 19.05* "intoxication" means that the actor does not have the normal use of his mental or physical faculties by reason of the voluntary introduction of any substance into his body. The offense is a third degree felony. We find there is substantial and ample evidence of probative force to sustain the conviction for involuntary homicide. *See Robbins v. State,* 667 S.W.2d 318 (Tex.App.—El Paso 1984, pet. ref'd).

Among other witnesses, we think the testimony of Debbie Ghezzi was relevant and material. Her occupation was teaching and coaching at Lamar University. On May 8, 1984, she witnessed the accident in question at the Shamrock Station. Her attention was called to somebody going through the area where the slow traffic was backing up. She observed a driver going at a higher rate of speed. The offending vehicle hit some water that was backed up into a "gully area" and "it shot a stream of water high up in the air". The offending vehicle was going much faster than the other traffic. The other traffic was extremely slow. The observed vehicle then went over a curb and through a Shamrock Station where it struck a Shamrock employee, Dee Ann Gray. Gray flew over the hood and was momentarily lodged against the windshield and then fell off the car and was "kind of drug behind". The offending car did not appear to slow down. She heard no squealing tires. The car did not swerve or attempt to swerve. After the car hit the employee it exited on the opposite side of the Shamrock Station. The car took a right and traveled down a side street some distance.

Appellant did admit that he had been drinking that disastrous day but he just felt like he was not drunk. He further stated: "I had slept most of it off and I felt real good." Appellant was asked:

"Q. If you had all this to do over again, would you have had—if you knew that you would have to go through the same thing, in other words, you were going to have to get in the car, the same car, and the same thing was going to happen, and you were going to have to swerve through there, and all that,

would you want to be doing it with a .22 blood alcohol concentration, or would you be wanting to do it as sober as you may be, today, in the courtroom?

"A. I would want to do it in—under two point—I would want to do it as sober as I am in the courtroom, and I would do it, again; if the brakes wouldn't have went out, that would never have happened.

"Q. So, the alcohol—if you had it to do over again, you would wish you hadn't been drinking that day, is that right?

"A. Right.

"Q. Because the alcohol probably had some kind of effect on you. You heard the man talking about the way that alcohol affects people? You would rather do it without the alcohol, wouldn't you?

"A. Yes, I would.

"Q. So, the alcohol was part of what was the problem out there, if not the problem, wasn't it?

"A. No, sir. I don't think the alcohol would be a problem that bad...."

The record is clear that the Appellant had been warned by the owner of the vehicle that there existed a definite and serious problem with the braking system. Under the entirety of this record we find the evidence was amply sufficient to sustain a conviction for involuntary homicide. *See Carlsen, supra; Freeman, supra; Denby, supra;* and *Wilson, supra. See also Houston, supra.*

We think the experienced trial judge weighed the testimony and evidence of all of the witnesses and obviously came to the conclusion that the tragic accident and resulting death would not have occurred but for the intoxication. We hold, here, a rational trier of facts could and did find the essential elements of this crime beyond a reasonable doubt.

We necessarily overrule Ground of Error 2 and affirm the judgment and sentence.

AFFIRMED.